**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Michael Eason,** **Civil No. 00-311 (PAM/SRN)**

**Plaintiff,**

**v.**

**ORDER**

**The Anoka Hennepin County Drug Task Force; Anoka County, Minnesota; Hennepin County, Minnesota; The City of Maple Grove, Minnesota; The City of Brooklyn Park, Minnesota; The State of Minnesota; The Minnesota Counties of A-Z; The Minnesota Cities of A-Z; and/or John Doe Nos. 1-5, all in their individual and official capacities,**

**Defendants.**

---

Paul D. Peterson, Esq., on behalf of Plaintiff.

Paul D. Reuvers, Esq. and P. Kenneth Kohnstamm, Esq., on behalf of Defendants.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on October 2, 2001, on Defendants' Motion to Compel (Doc. No. 20), and Plaintiff's Motion to Amend the Scheduling Order, and for Leave to Amend the Complaint (Doc. No. 23).

This Order addresses those Motions.

## I. FACTUAL BACKGROUND

This case involves allegations that members of the Anoka-Hennepin County Drug Task Force, at least one Minnesota State Trooper, and members of the Federal Drug Enforcement

FILED NOV 07 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Agency (DEA) were all present when Plaintiff was handcuffed during a high-risk felony arrest. Plaintiff was believed to be associated with the Hells Angels motorcycle group (Hells Angels), and based upon information received from confidential informants indicating that he was involved in narcotics and illegal firearms trading, a warrant was issued to search and detain Plaintiff. On February 11, 1998, during the execution of the warrant, Plaintiff was handcuffed. Plaintiff alleges that before being arrested, he stated that his arms could not be handcuffed behind his back, because he had undergone open-heart surgery and his chest was "wired up." Plaintiff alleges that Defendants nevertheless handcuffed him behind his back, causing him significant injury. During the search, no narcotics were found. The investigating officers seized and inventoried all of the firearms discovered on Plaintiff's premises, but they were determined to be legally owned and registered. Consequently, no criminal charges were brought against Plaintiff. On February 8, 2000 Plaintiff filed a Complaint claiming violations of his Fourth, Eighth, and Fourteenth Amendment rights, and negligence on the part of the arresting officers.

**A. Defendant's Motion to Compel.**

In the course of discovery, Plaintiff's counsel objected to answering Defendants' Interrogatory Number 18, which asks Plaintiff to explain his affiliation with the Hells Angels. In addition, Plaintiff's counsel instructed him not to answer any questions during his deposition concerning (1) his affiliation with the Hells Angels, (2) the affiliation with the Hells Angels of any of the witnesses he identified, and (3) any questions regarding the manner in which he acquired the weapons found at his house. Plaintiff's counsel asserted an irrelevance objection to these deposition questions and to the Interrogatory. In addition, Plaintiff's counsel asserted a First-Amendment, or freedom of association, privilege in response to all of the questions dealing

with Plaintiff's association with the Hells Angels.

Defendants state that this information is relevant and they are entitled to it. With respect to the irrelevance objection, Defendants maintain that under Federal Rule of Civil Procedure 30(c), Plaintiff should have answered these questions subject to objection, rather than refusing to answer them altogether. Defendants also state that Plaintiff lacks any justifiable First Amendment objection to answering questions regarding his affiliation with the Hells Angels. Defendants explain that "[t]here is no good faith argument that responding to a question concerning one's affiliation with a group implicates the First Amendment."

Defendants emphasize the relevance of the information they seek. They explain that "[t]he manner in which Plaintiff was arrested and handcuffed is the issue in this case and evidence relating to why Defendants used the procedure they did is directly related to Plaintiff's association with the Hells Angels motorcycle group." Defendants further contend that because the officers will testify concerning Plaintiff's alleged involvement with the Hells Angels, they are entitled to know whether Plaintiff will deny any such affiliation at trial. With respect to the other potential witnesses, Defendants explain that their association with the Hells Angels would be relevant to their credibility and bias as witnesses.

Defendants make the same argument in defense of their question regarding how Plaintiff acquired the weapons found on his premises. They explain that the officers were particularly careful while arresting and searching Plaintiff, because they believed he was a weapons specialist. Defendants state that because the officers "will testify concerning Plaintiff's believed involvement with trading guns for drugs, they are entitled to know if he will deny this assertion."

As a final note, Defendants request their attorney's fees and costs associated with

bringing this motion, because they made a good faith effort to obtain the disclosures they seek without court action.

Plaintiff responds that the information Defendants seek is irrelevant to the issue in question, and therefore, the Court should not compel him to answer either Interrogatory Number 18, or the remaining questions from his deposition. Plaintiff explains that the present suit concerns whether the officers acted reasonably in handcuffing Plaintiff in the manner they chose. Plaintiff contends that this reasonableness inquiry can only be based on facts the officers were aware of at the time they handcuffed him. Plaintiff states that the only relevant facts for determining the officers' reasonableness, then, are what they already knew as a result of their informants' allegations, and what they learned from Plaintiff while they were confronting him. Whether or not the allegations later proved false is irrelevant, Plaintiff explains, because "the false nature of those allegations have nothing to do with the conduct of the officers during his arrest and detention." Thus, Plaintiff should not be compelled to answer questions regarding his alleged affiliation with the Hells Angels, or any details concerning how he obtained his firearms, because those facts do not bear on the officers' state of mind at the time he was handcuffed.

Moreover, Plaintiff contends that Defendants already possess all the background information that exists concerning his firearms. Plaintiff explains that the officers seized his firearms and performed a complete tracing process. Plaintiff states that "if there were anything illegal in the acquisition or past use of these items, charges would have followed." Because no charges followed, Plaintiff maintains that there is no additional information to provide.

With respect to the other potential witnesses and their possible relationship with the Hells Angels, Plaintiff explains that the only witnesses he identified are his wife, son, two family

friends, and a friend who helped him after his chest repair surgery. Plaintiff contends that Defendants have "no good faith basis for believing any such relationship exists between plaintiff, his family and the other witnesses that were identified by the plaintiff in this action." Therefore, Plaintiff concludes that he should not be compelled to produce this information.

The Court denies Defendants' motion. As an initial matter, the Court notes that Plaintiff's counsel followed an incorrect procedure when instructing his client not to answer the questions put to him at his deposition. Because Plaintiff was not objecting based on a recognized privilege, Plaintiff's counsel should have instructed him to answer subject to objection. See Fed. R. Civ. P. 30(c). Alternatively, Plaintiff's counsel could have halted the depositions temporarily and immediately contacted the Court with a request for a protective order. The Court directs Plaintiff's counsel to observe proper procedure in the future.

Nevertheless, the Court finds that the information sought should not be compelled. Plaintiff is correct that the only relevant facts for determining the officers' reasonableness concern what they knew and believed at the time they handcuffed Plaintiff. Hence, any additional information Plaintiff could supply to either verify or disprove the allegations made by Defendants' informants is irrelevant, because it could not have affected the officers' state of mind at the time they handcuffed Plaintiff. Thus, Defendant's questions do not appear "reasonably calculated to lead to the discovery of admissible evidence." Therefore, the Court will not compel Plaintiff to answer them. See Fed. R. Civ. P. 26(b)(1). This is equally true for the issue of the officers' qualified immunity, because such immunity will also depend on the officers' reasonableness at the time of the handcuffing.

The Court also finds that Plaintiff is not obligated to answer questions concerning the

potential witnesses' affiliation with the Hells Angels. If the Court finds such information admissible for impeachment purposes, then Defendants may inquire into it directly from these witnesses while they are testifying. But Plaintiff is not obligated to provide this information during discovery, and Defendants would essentially be harassing him if they demanded to know about the social and political affiliations of his family and friends. Therefore, the Court will also not compel Plaintiff to answer these questions.

**B. Plaintiff's Motion to Amend the Scheduling Order, and for Leave to Amend the Complaint.**

**1. Amending the Pleadings.**

Federal Rule of Civil Procedure 15(a) provides that a court may allow amendments to pleadings "when justice so requires." In interpreting this rule, the Supreme Court has stated:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded the opportunity to test his claims on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962). Neither delay nor dilatory motive are sufficient in themselves to deny a party leave to amend a pleading. The delay or dilatory motive must result in prejudice to the party opposing the motion. Buder v. Merrill Lynch, Pierce, Fenner & Smith, 644 F.2d 690, 694 (8th Cir. 1981). Even if the adverse party would suffer some prejudice if the motion to amend were granted, that prejudice must be balanced against the hardship to the moving party if the motion were denied. Id.

The Eighth Circuit has held that "[a]lthough amendment of a complaint should be

allowed liberally to ensure that a case is decided on its merits, . . . there is no absolute right to amend." Ferguson v. Cape Girardeau County, 88 F.3d 647, 650-51 (8th Cir. 1996). In particular, leave to amend may be properly denied when the proposed amendment would be futile. See Holloway v. Dobbs, 715 F.2d 390, 393-94 (8th Cir. 1983). The Eighth Circuit has also held, however, that amendments should be denied on the merits of the claim only if the amendment asserts clearly frivolous claims. Buder, 644 F.2d at 694. The determination as to whether to grant leave to amend is entrusted to the sound discretion of the trial court. Niagra of Wisconsin Paper Corp. v. Paper Industry Union Management Pension Fund, 800 F.2d 742, 749 (8th Cir. 1986).

Plaintiff seeks to accomplish the following with the amendment to the pleadings: (1) add Minnesota State Trooper Darby and the State of Minnesota back into the case, (2) add the Federal Government and the DEA, (3) add claims of joint enterprise/venture and joint tortious conduct, and (4) name the individual officers at the scene and the employing agencies as parties.

Pursuant to the October 13, 2000 Pretrial Scheduling Order, all motions seeking to amend the pleading or add parties were to have been served by January 2, 2001, and discovery in this case was to be completed by August 1, 2001. On February 9, 2001, Plaintiff served interrogatories and document requests seeking the identity of any law enforcement officers involved in the events of February 11, 1998. On March 7, 2001, Defendants' counsel's office requested a two-week extension to respond to the requests. On April 23, 2001, Plaintiff still had not received the responses, and contacted Defendants' counsel. On May 21, 2001, Defendants' counsel advised Plaintiff's counsel that a Stipulation and Protective Order would have to be signed in order to release the names of the law enforcement officers. A Stipulation and

Protective Order were submitted to the Court and were signed on June 6, 2001. On June 6, 2001, Plaintiff's counsel contacted Defendants' counsel and informed him that while Plaintiff did not know the names of the law enforcement officers involved, Plaintiff still wanted to depose these individuals. Plaintiff's counsel then requested that Defendant's counsel check the availability of the law enforcement officers for their depositions to be taken during the weeks of July 2 and July 9, 2001. On June 14, 2001, Plaintiff's counsel wrote to Defendants' counsel requesting that the discovery responses be forwarded in light of the June 6, 2001 Stipulation and Protective Order from the Court.

On June 29, 2001, still having not received Defendants' discovery responses, Plaintiff's counsel canceled the scheduled depositions. On July 5, 2001, Plaintiff's counsel received Defendants' discovery responses via U.S. Mail. However, the law enforcement officers' personnel files were not included with these responses. Nevertheless, Plaintiff's counsel agreed to proceed with the depositions on July 12 and July16. During these depositions, it became clear that all of the officers being deposed were going to deny any individual involvement in the handcuffing of Plaintiff, and were also going to deny any knowledge of which officers actually did perform the handcuffing. These officers, however, indicated that unidentified DEA agents and Trooper Darby were present at the time of the arrest, and left open the possibility that one of them might have handcuffed Plaintiff.

The State of Minnesota was previously a party to this action. It was dismissed without prejudice when Trooper Darby, who was not a member of the Anoka-Hennepin County Drug Task Force, gave a sworn affidavit stating that he was not involved in the handcuffing of Plaintiff. Because the members of the task force have no memory of who handcuffed Plaintiff,

and also do not rule out Trooper Darby, Plaintiff seeks to join Trooper Darby and the State back into this action, along with the unidentified DEA agents.

Plaintiff states that it has brought this motion in good faith and in a timely fashion. Plaintiff's counsel explains that he and Defendants' counsel had initially planned to work together to discover which of the officers present at the arrest were actually involved in the handcuffing. However, Defendants' counsel's delays, and the uninformative responses from law enforcement officers during their depositions, have left Plaintiff with no choice but to name all those officers who were possibly involved, and to perform further discovery. Additionally, Plaintiff states that he is continuing to pursue reports concerning the federal officers involved, but has encountered delays because he continues to be told the information he seeks is privileged.

Defendants oppose adding the State of Minnesota and Trooper Darby as defendants. Defendants state that under the applicable standard, adding these parties is clearly frivolous. Defendants maintain that Plaintiff has no basis in fact or law to assert a claim against any individual officer. Because Plaintiff can not prove which officer actually handcuffed him, it would be necessary for him to request that the jury speculate as to who did it. Defendants contend that Plaintiff, therefore, has no factual basis for bringing his claims.

Defendants further explain that there is no legal basis for Plaintiff's claims. The only possible legal bases for Plaintiff's case, Defendants maintain, are to claim a Fourth Amendment violation, or negligence on the part of the handcuffing officer. Because these officers were performing a discretionary task when they chose to handcuff Plaintiff, however, Defendants contend that the officers would be entitled to qualified immunity under a Fourth Amendment claim. And under a negligence claim, Defendants argue that the officers would be entitled to

official immunity for their discretionary decision to handcuff Plaintiff. Therefore, Defendants conclude that there is no legal basis for adding any individual defendants.

The Court grants Plaintiff's motion with respect to adding the Federal Government and the DEA, adding claims of joint enterprise and joint tortious conduct, and naming the individual officers at the scene and the employing agencies as parties. The Court denies Plaintiff's motion with respect to adding Trooper Darby and the State of Minnesota.

The Court notes that it is unfortunate that none of the agencies involved in this incident have maintained reports detailing who actually performed the handcuffing of Plaintiff. If they had, it would have been possible to narrow this case significantly during discovery. Because they did not, this becomes a fact issue that must be presented to the jury. While Plaintiff has the burden of proof, the Court will not deny him the opportunity to name potentially appropriate Defendants simply because none of the officers who were questioned were willing to identify who actually handcuffed him.

All of the individuals Plaintiff seeks to add were present during the arrest, and therefore are candidates for the suit. Whether or not Plaintiff can succeed on his claims against any of these individuals is a fact issue for the jury, rather than an issue to be resolved at the pleading stage. With respect to immunity, the relevant issue is whether the officers who handcuffed Plaintiff acted in a manner that is objectively reasonable. That also is a fact issue which should be resolved by the jury.

With respect to Trooper Darby, however, Plaintiff has already seen all the relevant documents. Trooper Darby provided a sworn affidavit stating he was not involved in the handcuffing of Plaintiff. And while other officers have since stated that Trooper Darby was

present, none of them have contradicted his claim that he was not involved in the actual handcuffing. Therefore, the Court finds no reason to add Trooper Darby and the State of Minnesota back into the case.

### 2. **Amending the Pretrial Scheduling Order.**

Plaintiff requests an extension of the Pretrial Scheduling Order due to the delays he has encountered during discovery. Defendants do not oppose amending the Pretrial Scheduling Order.

The Court grants Plaintiff's motion to amend the pretrial scheduling order. Plaintiff has satisfied D.Minn. L.R. 16.3(b) by detailing what discovery remains to be completed, what discovery has been completed, why all discovery has not been completed, and how long it will take to complete discovery. An amended order will be filed separately.

**THEREFORE, IT IS HEREBY ORDERED that:**

(1) Defendants' Motion to Compel (Doc. No. 20) is **DENIED**;

(2) Defendants' request for their attorney's fees and costs is **DENIED**;

(2) Plaintiff's Motion to Amend the Scheduling Order, and for Leave to Amend the Complaint (Doc. No. 23) is:

**GRANTED** as to amending the Scheduling Order;

**GRANTED** as to adding the Federal Government and the DEA, adding claims of joint enterprise and joint tortious conduct, and naming the individual officers at the scene and the employing agencies as parties;

**DENIED** as to adding Trooper Darby and the State of Minnesota.

Dated: November 7, 2001

Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge